_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

**OCT 28 2021**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

Judge Robert S. Lasnik

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

GARY BOWSER,

Defendant.

NO. CR20-127 RSL

**PLEA AGREEMENT**

The United States of America, by and through Nicholas W. Brown, United States Attorney for the Western District of Washington, Francis Franze-Nakamura and Brian Werner, Assistant United States Attorneys for said District, Kenneth A. Polite, Jr., Assistant Attorney General for the United States Department of Justice's Criminal Division, Lindsay Baxter and Anand B. Patel, Trial Attorneys for said Division, and Defendant Gary Bowser, by and through his attorneys, Michael Filipovic and Christopher Sanders, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      1.      **The Charges**.  Defendant, having been advised of the right to have this

2  matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of

3  the following charges contained in the indictment.

4         a.      Conspiracy to Circumvent Technological Measures and to Traffic in

5  Circumvention Devices, as charged in Count 6, in violation of Title 18, United States

6  Code, Section 371.

7         b.      Trafficking in Circumvention Devices, as charged in Count 9, in

8  violation of Title 17, United States Code, Sections 1201(a)(2)(A) and 1204(a)(1).

9      By entering a plea of guilty, Defendant hereby waives all objections to the form of

10  the charging document.  Defendant further understands that before entering any guilty

11  plea, Defendant will be placed under oath.  Any statement given by Defendant under oath

12  may be used by the United States in a prosecution for perjury or false statement.

13      2.      **Elements of the Offense(s)**.  The elements of the offenses to which

14  Defendant is pleading guilty are as follows:

15         a.      The elements of Conspiracy to Circumvent Technological Measures

16  and to Traffic in Circumvention Devices, as charged in Count 6, are as follows:

17      **First,** there was an agreement between two or more persons to commit at least one

18  crime as charged in the indictment;

19      **Second,** the defendant became a member of the conspiracy knowing of at least one

20  of its objects and intending to help accomplish it; and,

21      **Third,** one of the members of the conspiracy performed at least one overt act for

22  the purpose of carrying out the conspiracy.

23      The elements of Trafficking in Circumvention Devices (Title 17, United States

24  Code, Sections 1201(a)(2)(A) and 1204(a)(1)) are as follows:

25      **First**, the defendant acted willfully;

26      **Second**, the defendant manufactured, imported, offered to the public, provided, or

27  otherwise trafficked in any technology, product, service, device, component, or part

28  thereof;

Plea Agreement - 2
*United States v. Gary Bowser*, CR20-127 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Third**, the technology, product, service, device, component, or part thereof that was primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively controlled access to a copyrighted work; and

**Fourth**, the defendant acted for commercial advantage or private financial gain.

The elements of Circumventing a Technological Measure (Title 17, United States Code, Sections 1201(a)(1)(A), and 1204(a)(1)) are as follows:

**First**, the defendant acted willfully;

**Second**, the defendant circumvented a technological measure;

**Third**, the technological measure effectively controlled access (i.e., was an access control);

**Fourth**, the access control was to a copyrighted work; and

**Fifth**, the act of circumvention was for the purpose of commercial advantage or private financial gain.

A technological measure "effectively controls access to a work" if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work.

The term "circumvent a technological measure" means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner.

      b.     The elements of Trafficking in Circumvention Devices, as charged in Count 9, are as follows:

**First**, the defendant acted willfully;

**Second**, the defendant manufactured, imported, offered to the public, provided, or otherwise trafficked in any technology, product, service, device, component, or part thereof;

**Third**, the technology, product, service, device, component, or part thereof that was primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively controlled access to a copyrighted work; and

**Fourth**, the defendant acted for commercial advantage or private financial gain.

3.     **The Penalties**.  Defendant understands that the statutory penalties applicable to the offense(s) to which Defendant is pleading guilty are as follows:

a.     For the offense of Conspiracy to Circumvent Technological Measures and to Traffic in Circumvention Devices, as charged in Count 6: A maximum term of imprisonment of up to five years, a fine of up to $250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100.  If a probationary sentence is imposed, the probation period can be for up to five years.

b.     For the offense of Trafficking in Circumvention Devices, as charged in Count 9: A maximum term of imprisonment of up to five years, a fine of up to $500,000, a period of supervision following release from prison of up to one year, and a mandatory special assessment of $100.  If a probationary sentence is imposed, the probation period can be for up to five years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements.  Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed.  This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Plea Agreement - 4
*United States v. Gary Bowser*, CR20-127 RSL

1  Defendant agrees that any monetary penalty the Court imposes, including the

2 special assessment, fine, costs, or restitution, is due and payable immediately and further

3 agrees to submit a completed Financial Disclosure Statement as requested by the United

4 States Attorney's Office.

5   4. **Immigration Consequences**.  Defendant recognizes that pleading guilty

6 may have consequences with respect to Defendant's immigration status if Defendant is

7 not a citizen of the United States.  Under federal law, a broad range of crimes are grounds

8 for removal, and some offenses make removal from the United States presumptively

9 mandatory.  Removal and other immigration consequences are the subject of a separate

10 proceeding, and Defendant understands that no one, including Defendant's attorney and

11 the Court, can predict with certainty the effect of a guilty plea on immigration status.

12 Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any

13 immigration consequences that Defendant's guilty pleas may entail, even if the

14 consequence is Defendant's mandatory removal from the United States.

15   5. **Rights Waived by Pleading Guilty.**  Defendant understands that by

16 pleading guilty, Defendant knowingly and voluntarily waives the following rights:

17    a. The right to plead not guilty and to persist in a plea of not guilty;

18    b. The right to a speedy and public trial before a jury of Defendant's

19 peers;

20    c. The right to the effective assistance of counsel at trial, including, if

21 Defendant could not afford an attorney, the right to have the Court appoint one for

22 Defendant;

23    d. The right to be presumed innocent until guilt has been established

24 beyond a reasonable doubt at trial;

25    e. The right to confront and cross-examine witnesses against Defendant

26 at trial;

27    f. The right to compel or subpoena witnesses to appear on Defendant's

28 behalf at trial;

Plea Agreement - 5
*United States v. Gary Bowser*, CR20-127 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

g.      The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h.      The right to appeal a finding of guilt or any pretrial rulings.

6.      **United States Sentencing Guidelines**.  Defendant understands and acknowledges that, before accepting the terms of this Plea Agreement, the Court must consider the sentencing range calculated under the United States Sentencing Guidelines, and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including:  (1) the nature and circumstances of the offense or offenses; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense or offenses, to promote respect for the law, and to provide just punishment for the offense or offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records.  Accordingly, Defendant understands and acknowledges that:

a.      The Court will determine Defendant's applicable Sentencing Guidelines range at the time of sentencing;

b.      After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law; and

c.      Except as provided in the paragraph containing the stipulation of the parties pertaining to sentencing, Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7.      **Ultimate Sentence**.  Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

Plea Agreement - 6
*United States v. Gary Bowser*, CR20-127 RSL

1         8.   **Statement of Facts**.  The parties agree on the following facts.  Mr. Bowser

2   admits that he is guilty of the charges in counts 6 and 9.

3         a.   Defendant, GARY BOWSER, aka "GaryOPA," knowingly and

4   willfully participated in a cybercriminal enterprise that hacked leading gaming consoles

5   and that developed, manufactured, marketed, and sold a variety of circumvention devices

6   that allowed the enterprise's customers to play pirated versions of copyrighted video

7   games, commonly referred to as "ROMs."  Mr. Bowser knowingly and willfully

8   participated in the illegal enterprise from no later than June 2013 until his arrest on

9   September 28, 2020.

10         b.   The enterprise included a core group of individuals, including, but

11   not limited to, co-defendants, Max Louarn and Yuanning Chen.  Among other things, Mr.

12   Bowser's role was to market the enterprise's products, post news releases about new

13   products and updates to products, and work with retailers who distributed the enterprise's

14   products.  Mr. Bowser would also post replies to inquiries from customers of these illegal

15   circumvention devices on Maxconsole.com.

16         c.   The enterprise used various names and brands, including, among

17   others, "Team Xecuter," "Axiogame.com," "Maxconsole.com," and "China

18   Distribution," to facilitate the sale of the circumvention devices

19         d.   The enterprise designed, marketed, and distributed a wide variety of

20   illegal circumvention devices including, but not limited to, the Gateway 3DS, the

21   Stargate 3DS, the TrueBlue Mini, the Classic2Magic, and the SX OS line of devices.

22   The devices either hacked an existing console or facilitated the playing of pirated copies

23   of video games that were to be played on legitimate consoles.  The following chart

24   identifies a selection of the illegal devices the enterprise developed and sold, the

25   approximate date range the enterprise distributed these products before charges were filed

26   in this case, and a non-exhaustive list of the impacted console manufacturers:

27

28

Plea Agreement - 7
*United States v. Gary Bowser*, CR20-127 RSL

| Product | Date Range | Impacted Console Manufacturer |
|---------|------------|-------------------------------|
| **Gateway 3DS** | June 2013 to August 19, 2020 | Nintendo |
| **Stargate** | August 2017 to August 19, 2020 | Nintendo |
| **TrueBlue Mini** | May 2019 to August 19, 2020 | Sony, Sega, C64 |
| **Classic2Magic** | August 2018 to August 19, 2020 | Nintendo, Atari, Sega |
| **SX OS / SX Pro** | May 2018 to August 19, 2020 | Nintendo |
| **SX OS / SX Lite / SX Core** | June 2020 to August 19, 2020 | Nintendo |

e.      The enterprise's development, sale, and distribution of the circumvention devices involved the interstate and international transmission of electronic communications about the devices, in addition to the interstate and international shipment of the actual devices, to locations in the Western District of Washington and elsewhere.

f.      The devices created and sold by the enterprise circumvented technological measures in a manner that allowed users to play pirated ROMs. The devices mimicked legitimate gameplay on consoles, and in certain instances, surreptitiously accessed Nintendo's servers and online gaming ecosystem without authorization.

g.      The commercial success of the enterprise's circumvention devices depended primarily on the availability of pirated ROMs. The enterprise created and supported ROM libraries of games that could be used by the enterprise's customers. The enterprise directed users to the ROM libraries through the enterprise's websites, including maxconsole.com. Additionally, some of the enterprise's resellers sold circumvention

Plea Agreement - 8
*United States v. Gary Bowser*, CR20-127 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    devices as a package with ROMs of game titles or otherwise offered ROMs directly or

2    indirectly to customers.

3           h.     While the enterprise attempted to cloak its illegal activity with a

4    purported desire to support homebrew enthusiasts who wanted to design their own

5    games, the predominant and primary design of the enterprise's products was to allow

6    purchasers to play pirated ROMs.

7           i.     Mr. Bowser was put in charge of the website, maxconsole.com, by

8    Max Louarn and took directions from Max Louarn about the content of the site. It served

9    as a central location for the enterprise to publish reviews and advertisements and to host

10   customer support forums.  The website was a significant part of the enterprise's efforts to

11   use a variety of websites to market and sell its devices, and to engage in copyright and

12   trademark infringement.  The mission statement for the website explained that the

13   website contained "vast resources for Retro Gamers, with total scene coverage on all the

14   things that matter like ROMs, FlashCarts, Modding, Homebrew and emulators."  The

15   website acted as a central clearinghouse for information about the enterprise's products.

16   The website also posted numerous "reviews" of the enterprise's products, which Mr.

17   Bowser had solicited from distributors and other individuals associated with the

18   development and sale of those products.  The website also had numerous forums devoted

19   to circumvention devices and software piracy.

20          j.     On maxconsole.com, Mr. Bowser regularly posted announcements

21   for products created and distributed by the illegal enterprise.  Mr. Bowser also posted

22   articles regarding Team Xecuter's response to Nintendo's enforcement actions.    For

23   example, on approximately July 17, 2020, Mr. Bowser posted a statement from Team

24   Xecuter describing countermeasures that the enterprise was taking in response to

25   software updates that Nintendo instituted to combat piracy.  The enterprise described

26   Team Xecuter's countermeasures as part of a "Cat & Mouse" game between Nintendo

27   and Team Xecuter.

28

Plea Agreement - 9
*United States v. Gary Bowser*, CR20-127 RSL

1               k.      Team-Xecuter.com, served as the official website for Team Xecuter.

2 That brand name was purchased by Max Louarn in approximately 2015, and the

3 enterprise began using that website in approximately 2016 and expanded it to include

4 information concerning circumvention devices related to Nintendo products. The website

5 attempted to portray Team Xecuter as a legitimate company that embraced "honesty and

6 integrity." The website marketed each of the Team Xecuter-branded products and

7 provided information regarding the installation and use of the products. The website did

8 not directly sell the enterprise's products. Instead, the website offered links to

9 "authorized" retailers who were responsible for distributing those products around the

10 world. The website also hosted numerous product support forums. Mr. Bowser was

11 knowingly involved in these activities on Team-Xecutor.com after it was purchased by

12 Max Louarn.

13             l.      In addition to the websites above, the enterprise created marketing

14 websites for each of its main products. For example, the enterprise created a marketing

15 website for the Classic2Magic circumvention device that allowed users to illegally play a

16 wide variety of ROMs. The website contained a link to ROM libraries that were

17 identified in posts on maxconsole.com. These posts, in turn, linked to 18 ROM libraries

18 that were hosted on or linked to from a website Mr. Bowser administered called rom-

19 bank.com. Collectively, these ROM libraries contained illegal copies of 13,630

20 individual video game titles.

21             m.     One of the most lucrative products made by Team Xecuter was the

22 SX OS line of circumvention devices designed to defeat technological measures on

23 various models of the Nintendo Switch. The SX OS was a custom operating system that

24 Team Xecuter developed to hack the Nintendo Switch. The SX OS was regularly paired

25 with a hardware device that facilitated the circumvention of the technological measures

26 on the Nintendo Switch and permitted users to, among other things, access and

27 manipulate the copyrighted Nintendo Switch operating system and play pirated ROMs.

28

Plea Agreement - 10
*United States v. Gary Bowser*, CR20-127 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        n.     To enable the SX OS to play pirated ROMs, a user generally would

2  need to connect the Switch console to the internet to purchase a "license" from Team

3  Xecuter to unlock the full features of the operating system.  The SX OS license allowed

4  users to forego purchasing a game cartridge from a retailer or a digital game from

5  Nintendo's eShop because the full-featured SX OS bypassed the normal operation of

6  technological measures that were designed to limit the use of the console to legitimately

7  purchased games.  Among other technological measures, the SX OS circumvented an

8  authentication process that used cryptographic keys to ensure that only authorized games

9  were played on a particular Switch console.

10        o.     The enterprise designed the SX OS to insert itself into the legitimate

11  firmware of the Switch console.  In doing so, the SX OS surreptitiously co-opted

12  functions and processes that Nintendo implemented to support legitimate gameplay on

13  the Switch consoles.  Notably, the SX OS used, without authorization, and in violation of

14  the Switch console's end user agreement, servers that Nintendo maintained to facilitate

15  internet connectivity and to authenticate the use of genuine Nintendo software.  The SX

16  OS was designed to falsely represent to Nintendo's servers that the Nintendo Switch on

17  which it was operating was using a legitimate version of the Nintendo operating system

18  and legitimate Switch videogames.  In this manner, the enterprise designed the SX OS to

19  generate criminal proceeds from the fraudulent use of Switch consoles and the Nintendo

20  servers that were dedicated to support legitimate gameplay on those consoles.

21        p.     Nintendo undertook various efforts to combat the enterprise's

22  release of the SX Pro and SX OS.  In response, Team Xecuter released new devices or

23  updated the enterprise's software to permit further circumvention.  For example, in or

24  around June 2018, Nintendo released a new version of the Nintendo Switch with updated

25  technological measures to prevent the console from being hacked by the SX Pro and SX

26  OS.  Furthermore, in or around September 2019, Nintendo released a new console, the

27  Nintendo Switch Lite, that was produced with the updated technological measures to,

28  among other things, address circumvention devices such as the SX Pro and SX OS.  On

Plea Agreement - 11
*United States v. Gary Bowser*, CR20-127 RSL

1  or about December 28, 2019, the enterprise responded by announcing the development of

2  new circumvention devices and posting a video to their blog, team-xecuter.com, showing

3  the SX OS purportedly running on the Nintendo Switch Lite.

4       q.    In or around April 2020, the enterprise announced they would begin

5  accepting pre-orders for new circumvention devices, called "SX Core" and "SX Lite."

6  The enterprise designed the SX Core to circumvent the technological measures in pre-

7  and post-June 2018 Nintendo Switch consoles.  The enterprise designed the SX Lite to

8  circumvent the technological protection measures in the Nintendo Switch Lite.  Unlike

9  the SX Pro, these circumvention devices need to be installed inside the casing of the

10  console.

11       r.    The enterprise generated at least tens of millions of dollars of

12  proceeds from the sale of its circumvention devices.  Mr. Bowser understood that his

13  participation in the illegal enterprise harmed copyright and trademark holders, console

14  manufacturers, and others who were entitled to the revenue from not only the use of the

15  circumvented consoles, but also from the purchase and  playing of copyrighted video

16  games.  For the purposes of this plea agreement only, the parties stipulate that – during

17  Mr. Bowser's participation in the cybercriminal enterprise – the enterprise caused more

18  than $65,000,000 and less than $150,000,000 in losses to its victims.

19       s.    Based on a review of his financial records, Mr. Bowser reports that

20  the enterprise regularly paid him approximately $500-1000 a month from 2013 to the

21  date of his arrest in September 2020 for operating and administering team-xecuter.com

22  and maxconsole.com.  In addition, Mr. Bowser was allowed to keep revenue generated

23  from advertisements placed on the websites.  Some of these advertisements were for

24  retailers who sold the enterprise's products and some were advertisements unrelated to

25  the enterprise. Mr. Bowser estimates that he made a total of approximately $320,000

26  from his involvement in the enterprise, comprised of the monthly payments he received

27  from the enterprise, the advertising revenue from the enterprise's retailers, and unrelated

28

Plea Agreement - 12
*United States v. Gary Bowser*, CR20-127 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    sources of advertising revenue that he was allowed to keep as a benefit for running

2    maxconsole.com.

3           The parties agree that the Court may consider additional facts contained in the

4    Presentence Report (subject to standard objections by the parties) and/or that may be

5    presented by the United States or Mr. Bowser at the time of sentencing, and that the

6    factual statement contained herein is not intended to limit the facts that the parties may

7    present to the Court at the time of sentencing.

8           9.    **Sentencing Factors**.  The parties agree that the following Sentencing

9    Guidelines provisions apply to this case:

10                 a.      A base offense level of 8 pursuant to USSG § 2B5.3.

11                 b.      A 24-level increase pursuant to USSG § 2B5.3(b)(1) and USSG

12   § 2B1.1(b)(1)(M) because the loss in this case was more than $65,000,000 and less than

13   $150,000,000.

14                 c.      A 2-level increase pursuant to USSG § 2B5.3(b)(3) because the

15   offense involved the manufacture, importation, or uploading of infringing items and

16   because the defendant was convicted under 17 U.S.C. §§ 1201 and 1204 for trafficking in

17   circumvention devices.

18          The parties agree they are free to present arguments regarding the applicability of

19   all other provisions of the United States Sentencing Guidelines.  In particular, Defendant

20   understands that the Government will request, among other possible adjustments, a 3-

21   level increase pursuant to USSG § 3B1.1 because the Government alleges that Defendant

22   was a manager or supervisor in the Team Xecuter cybercriminal enterprise.

23          Defendant understands, however, that at the time of sentencing, the Court is free to

24   reject these stipulated adjustments, and is further free to apply additional downward or

25   upward adjustments in determining Defendant's Sentencing Guidelines range.

26          10.   **Acceptance of Responsibility.**  At sentencing, *if* the Court concludes

27   Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant

28   to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will

Plea Agreement - 13
*United States v. Gary Bowser*, CR20-127 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  make the motion necessary to permit the Court to decrease the total offense level by three

2  levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United

3  States by timely notifying the United States of Defendant's intention to plead guilty,

4  thereby permitting the United States to avoid preparing for trial and permitting the Court

5  to allocate its resources efficiently.

6      11.    **Restitution.**  Defendant shall make restitution to Nintendo of America in

7  the apportioned amount of $4,500,000 (which shall not be joint and several with any

8  other defendant).

9          a.    The full amount of restitution shall be due and payable immediately

10  on entry of judgment and shall be paid as quickly as possible.  If the Court finds that the

11  defendant is unable to make immediate restitution in full and sets a payment schedule as

12  contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule

13  represents a minimum payment obligation and does not preclude the United States

14  Attorney's Office from pursuing any other means by which to satisfy the defendant's full

15  and immediately-enforceable financial obligation, including, but not limited to, by

16  pursuing assets that come to light only after the district court finds that the defendant is

17  unable to make immediate restitution.

18          b.    Defendant agrees to disclose all assets in which Defendant has any

19  interest or over which Defendant exercises control, directly or indirectly, including those

20  held by a spouse, nominee, or third party.  Defendant agrees to cooperate fully with the

21  United States' investigation identifying all property in which Defendant has an interest

22  and with the United States' lawful efforts to enforce prompt payment of the financial

23  obligations to be imposed in connection with this prosecution.  Defendant's cooperation

24  obligations are:  (1) before sentencing, and no more than 30 days after executing this Plea

25  Agreement, truthfully and completely executing a Financial Disclosure Statement

26  provided by the United States Attorney's Office and signed under penalty of perjury

27  regarding Defendant's and Defendant's spouse's financial circumstances and producing

28  supporting documentation, including  tax returns, as requested; (2) providing updates

Plea Agreement - 14
*United States v. Gary Bowser*, CR20-127 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances; (3) authorizing the United States Attorney's Office to obtain Defendant's credit report before sentencing; (4) providing waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information; (5) authorizing the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office; (6) submitting to an interview regarding Defendant's Financial Statement and supporting documents before sentencing (if requested by the United States Attorney's Office), and fully and truthfully answering questions during such interview; and (7) notifying the United States Attorney's Office before transferring any interest in property owned directly or indirectly by Defendant, including any interest held or owned in any other name, including all forms of business entities and trusts.

c.      The parties acknowledge that voluntary payment of restitution prior to the adjudication of guilt is a factor the Court considers in determining whether Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).  In addition, in any event, the government will consider Defendant's cooperation regarding restitution in making its sentencing recommendation.

12.     **Abandonment of Contraband**.  Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

Defendant further agrees to abandon his interest in, if any, and consents to the destruction of, the following electronic devices and any data contained within, and additional items that were seized from his residence in the Dominican Republic:

a.   ULTRA PC tower, black, with three hard drives attached, open case design, no S/N

b.   HP Chrome device, turquoise, no S/N visible

c.   WD 500GB hard drive, S/N WCC2EARY7661

Plea Agreement - 15
*United States v. Gary Bowser*, CR20-127 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      d.  Seagate 1TB hard drive, S/N 9VP0D534

2      e.  Western Digital 12TB hard drive, S/N QGHWNG5T

3      f.  Western Digital 12TB hard drive, S/N 5PGYPKGF

4      g.  Samsung 1000GB hard drive, S/N S1Y5J90SB24158

5      h.  OPA self-inking stamp

6      i.  Rocketek flash drive, Verbatim flash drive, Hitachi flash drive, SanDisk

7         flash drive, black flash drive, 200GB SD card in adapter, 256MB compact

8         flash in reader

9      j.  1TB Seagate portable hard drive, S/N NA7NKG72, and cord

10      k.  Sony PlayStation Classic, AH310955991, with cords

11      l.  SNES mini

12      m. Arris cable modem, S/N 9C22D577D200102

13      n.  Nintendo Switch with dock and screen protector, S/N XAW70001523792

14      o.  Five TrueBlue Mini modchips

15      p.  Three SX OS modchips in package

16      q.  White Samsung smart phone (no S/N visible)

17      r.  LG smart phone (no S/N visible)

18      s.  Blue RCA tablet with attached keyboard, S/N PPJD8Z1209L0

19      t.  HP laptop, S/N TJ1541GNWG

20      u.  ZTE AT&T smart phone (no serial number visible)

21      v.  MSI laptop, S/N GS702PE-010US-GC747116G1T0DX81M with power

22         supply

23      w. A 32GB micro SD card (previously found in Texas Instruments command

24         module, S/N 9874684)

25      13.   **Dismissal of Charges.**  As part of this Plea Agreement, the United States

26 Attorney's Office for the Western District of Washington and the Computer Crime and

27 Intellectual Property Section of the United States Department of Justice will move to

28 dismiss the remaining counts in the Indictment against Defendant at the time of

Plea Agreement - 16
*United States v. Gary Bowser*, CR20-127 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

sentencing.  Defendant agrees, however, that for purposes of preparing the Presentence Report, the government will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

14.    **Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence.  Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement.  Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range.  Under these circumstances, the United States is

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  free to seek such adjustments, enhancements, departures, and/or variances even if

2  otherwise precluded by the terms of the Plea Agreement.

3       15.    **Waiver of Appellate Rights and Rights to Collateral Attacks.**

4  Defendant acknowledges that, by entering the guilty plea(s) required by this Plea

5  Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any

6  pretrial rulings of the Court, and any rulings of the Court made prior to entry of the

7  judgment of conviction.  Defendant further agrees that, provided the Court imposes a

8  custodial sentence that is within or below the Sentencing Guidelines range (or the

9  statutory mandatory minimum, if greater than the Guidelines range) as determined by the

10 Court at the time of sentencing, Defendant waives to the full extent of the law:

11       a.     Any right conferred by Title 18, United States Code, Section 3742,

12 to challenge, on direct appeal, the sentence imposed by the Court, including any fine,

13 restitution order, probation or supervised release conditions, or forfeiture order (if

14 applicable); and

15       b.     Any right to bring a collateral attack against the conviction and

16 sentence, including any restitution order imposed, except as it may relate to the

17 effectiveness of legal representation.

18       This waiver does not preclude Defendant from bringing an appropriate motion

19 pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or

20 the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

21       If Defendant breaches this Plea Agreement at any time by appealing or collaterally

22 attacking (except as to effectiveness of legal representation) the conviction or sentence in

23 any way, the United States may prosecute Defendant for any counts, including those with

24 mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

25 Agreement.

26       16.    **Voluntariness of Plea**.  Defendant agrees that Defendant has entered into

27 this Plea Agreement freely and voluntarily, and that no threats or promises were made to

28

Plea Agreement - 18
*United States v. Gary Bowser*, CR20-127 RSL

1  induce Defendant to enter a plea of guilty other than the promises contained in this Plea

2  Agreement or set forth on the record at the change of plea hearing in this matter.

3       17.    **Statute of Limitations**.  In the event this Plea Agreement is not accepted

4  by the Court for any reason, or Defendant breaches any of the terms of this Plea

5  Agreement, the statute of limitations shall be deemed to have been tolled from the date of

6  the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the

7  Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach

8  of the Plea Agreement by Defendant is discovered by the United States Attorney's

9  Office.

10

11

12

13

14  //

15

16

17

18

19  //

20

21

22

23  //

24

25

26

27

28  //

Plea Agreement - 19
*United States v. Gary Bowser*, CR20-127 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18. **Completeness of Plea Agreement**. The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington and the Computer Crime and Intellectual Property Section of the United States Department of Justice. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 20 day of October, 2021.

GARY BOWSER
Defendant

MICHAEL FILIPOVIC
CHRISTOPHER SANDERS
Attorneys for Defendant

FRANCIS FRANZE-NAKAMURA
BRIAN WERNER
Assistant United States Attorneys

ANAND B. PATEL
Trial Attorney, Computer Crime and
Intellectual Property Section,
U.S. Department of Justice

Plea Agreement - 20
*United States v. Gary Bowser*, CR20-127 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970