*Michael Filipovic*
*Federal Public Defender*

January 20, 2022

Sent by Email

Amelia Whaley
Senior U.S. Probation Officer
United States Probation Office
700 Stewart Street, Suite 11101
Seattle, WA 98101

  Re: *United States v. Gary Bowser*, No. CR20-127-RSL
     Comments, Additions, and Objections to Draft PSR

Dear Ms. Whaley:

  These are my preliminary comments to the draft PSR. I will supplement this letter with any additional specific comments that Mr. Bowser provides when I speak with him tomorrow.

  This letter will focus on (1) our dispute with the role adjustment analysis including our view that Mr. Bowser should be granted a two-level minor role adjustment; (2) that the 24-level increase in the guideline range for the loss amount overstates the seriousness of Mr. Bowser's conduct and the financial benefit he received from his participation in this crime; and (3) grounds for a variance or departure below the Guidelines.

**Role adjustment**

  Mr. Bowser should not receive a manager or supervisor adjustment and should receive a two-level minor role decrease. This would place his final offense level at 29 with a range of 87 to 108 months. And by analogy to USSG § 5C1.2 and 2D1.1(b)(18), another two-level reduction for "safety valve" would take the offense level to 27 with a range of 70 to 87 months.

**Mr. Bowser is not a supervisor or manager.**

  To impose an organizer, leader, manager, or supervisor enhancement, there must be a "showing that the defendant had control over other[ ]" participants or "organiz[ed] other[ ] [participants] for the purpose of carrying out" the charged crimes. *United States v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012) (internal quotation marks omitted). Under the Ninth Circuit's clear articulation of § 3B1.1(c), "even a defendant with an important role in an offense" cannot receive an enhancement unless there is also a "showing that the

defendant had control over others." *United States v. Lopez–Sandoval*, 146 F.3d 712, 717 (9th Cir.1998) (internal quotation omitted).

In determining whether Mr. Bowser should receive a manager or supervisor adjustment, one must first identify which individuals are part of this conspiracy, and then what their roles were *vis a vis* Mr. Bowser. Of the three persons charged in the indictment, Mr. Bowser is clearly the least culpable; he exercised no management or supervisory role over Mr. Chen, Mr. Louarn, or others not named in the indictment. Mr. Bowser assisted in marketing the products through the website Mr. Louarn provided to Mr. Bowser, but that does not equate to control over others. The draft PSR does not specifically identify the other participants in the conspiracy who were "controlled," managed, or supervised by Mr. Bowser. Based on my knowledge of the facts, there were identifiable groups who may or may not be considered to be part of the conspiracy who should be considered in making this determination.

The first group is the developers of the circumvention devices, who were essential to this criminal activity. The developers were part of this conspiracy, and Mr. Bowser knew who they were but did not exercise management, supervisory authority, or control over the developers.

The other large group included resellers who sold the devices, some of whom placed ads on the Maxconsole. These individuals were essentially independent contractors and should not be considered part of this conspiracy. These individuals are analogous to independent drug dealers who sell to retail customers down the chain from the drug cartel members and large scale drug distribution networks. They are not participants in the conspiracy, but even if one were to consider them to be part of the conspiracy, Mr. Bowser did not control, manage, or supervise them.

The draft PSR contains certain key statements, apparently taken from the indictment, which go beyond the statement of facts in the plea agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Because the following statements in the draft PSR are not supported by the evidence and not included in the plea agreement, and because these specific statements could influence the outcome of the role adjustment, we ask that they be removed or edited from the final PSR. Thus, we ask that the factual statement in the PSR be circumscribed by the facts agreed to in the plea agreement. While both the parties can make arguments or present additional facts, any inferences to be drawn from the agreed facts or from argument by the parties should be left to the judge at sentencing. This is particularly important in a complex case involving a complex set of facts. Under these circumstances, factual disputes cannot be effectively

resolved in the presentence process based on law enforcement reports and characterizations by the government or by just relying on language from a "talking" indictment.

Here are my specific objections to the draft and some suggestions for editing:

The plea agreement acknowledges that "[t]he enterprise **included** a core group of individuals," but it does not state that the enterprise was **"led"** by this core group. Being part of the core group does not make one a manager or supervisor. Paragraph 17 of the draft PSR should be changed to conform with the statement of facts in the final plea agreement on this point. If the government choses to characterize Mr. Bowser as having "led" or being a leader, then they can make their case with the evidence, but their characterization should not be included in the final PSR as a fact.

Paragraph 19 of the draft PSR, which states that "Mr. Bowser was **responsible for developing** circumvention devices and marketing those devices," should also be changed to conform to the statement of facts in the plea agreement to read: "Mr. Bowser's role among other things **was to market the enterprise's products** by posting news releases, working with retailers who distributed the products, and posting replies to customer inquiries." *See* Dkt. 40 at 7, ¶ 8b. Mr. Bowser was not a developer, and he was not responsible for supervising or managing the developers—that was Max Louarn. Even with respect to the websites with which Mr. Bowser was significantly involved and controlled to a degree, the ultimate control, authority, and decision making rested with Mr. Louarn, and control of a website is not control of a person, which is required by the Guideline.

Most of the rest of the statement of facts in the plea agreement describes what the enterprise did as a whole, while sub-paragraphs (i) and (j) further describe what Mr. Bowser did, but those paragraphs do not establish him as managing or supervising others in those activities. It would be fair to include paragraphs (i) and (j) from the plea agreement in the PSR.

In comparing Mr. Bowser to the roles of developers and resellers, the following analysis weighs against the application of a manager or supervisor increase. As noted above, Mr. Louarn controlled and paid the developers. The developers were well paid by Mr. Louarn, much more than the $500 to $1000 month Mr. Bowser generally received. The background section to USSG § 3B1.1 makes specific mention that one reason for applying an increase to managers and supervisors who are not organizers or leaders is that "it is also likely that persons who exercise such supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate." Here it was the developers and resellers who

made more money than Mr. Bowser, and it was Mr. Louarn and Mr. Chen who made the most money in this enterprise. That Mr. Bowser made relatively little money from this multi-million dollar enterprise is further evidence he was not a manager or supervisor.

The resellers were essentially independent contractors, and Mr. Bowser had no authority, control, or management responsibilities over the resellers. In *United States. v. Lopez-Sandoval, supra,* the Court reversed a leadership enhancement where defendant exercised no control or organizational authority over his co-conspirators and his role was being a translator and relaying information about the time and location of the drug transactions and perhaps the price of the drugs, which is not enough to qualify as an organizer or leader. 146 F.3d at 717. Indeed, "[m]iddleman status alone cannot support a finding that a defendant was a supervisor, manager, [organizer,] or leader of a criminal activity...." *United States v. Brown*, 944 F.3d 1377, 1382 (7th Cir. 1991); *see also United States v. Avila*, 95 F.3d 887, 891 (9th Cir. 1996) (reversing leadership enhancement where there is no evidence in the record that defendant exercised any control or organizational authority over others or that he coordinated or oversaw the procurement or distribution of drugs). While Mr. Bowser facilitated the commission of this offense, he was not in control of others. And even with his responsibility for the website, Mr. Bowser took his general directions, and sometimes specific direction, from Max Louarn. Dkt. 40 at ¶ 8(i). Mr. Bowser posted product "reviews" he solicited from distributors and others, but he did not manage or lead them. *Cf., United States v. Woods*, 335 F.3d 993, 1002 (9th Cir. 2003) (reversing a supervisor role adjustment finding that referring customers back to closers for re prepping in a telemarketing scheme was not managerial or supervisory). Similarly, Mr. Bowser's soliciting and posting articles, and hosting forums for the end users of the product, did not turn him into a manager or supervisor of others involved in the conspiracy.

Finally, Mr. Bowser's control of the Maxconsole website was at the discretion of Mr. Louarn, who had control over the server and could shut down the website at any time. ███████████████████████████████████████████████████████████

**Mr. Bowser should receive a two-level minor role adjustment.**

This is an intensively fact based inquiry under USSG § 3B1.2. Some factors identified in the commentary to the Guideline support application of the minor role reduction:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

>    (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
>    (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
>    (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
>    (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
>    (v) the degree to which the defendant stood to benefit from the criminal activity.

USSG § 3B1.2, Application Note 3(C).

Some of these non-exhaustive factors support Mr. Bowser (ii, iii, and v), one weighs against him (i), and one can be argued by both sides (iv). The commentary goes on to make specific points which support the minor role adjustment:

> [A] defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline. The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

In Mr. Bowser's case, even if he was considered to perform an essential role in the offense, that is not determinative because he was simply paid a small monthly fee and permitted to use the Maxconsole website to reap additional revenues from both legitimate ads placed on the websites and from resellers who would pay him for their ads.

**The 24-level increase in Mr. Bowser's Guideline range for loss amount overstates the seriousness of his role in the offense and is an irrational measure for determining the appropriate punishment under 18 USC § 3553(a).**

The guideline impact of the stipulated loss amounts results in an extreme increase in the guideline range when considering Mr. Bowser's relatively small gain compared to

his co-defendants and others who are unindicted. In determining whether a variance should be considered on this point, and using Mr. Bowser's gain as an alternative measure for determining a variance, his gain would result in a 12-level (not a 24-level) increase in the offense level. This brings Mr. Bowser's "guideline range" down to 19 when combined with a minor role adjustment, with a range of 30 to 37 months. Even if he were denied a minor role and a management or supervisor adjustment were made, his final offense level would be 24 and his "guideline range" would be 51 to 63 months.

The fraud guidelines and their reliance on loss amounts have been criticized as a poor measure for determining an appropriate sentence. *See* Mark W. Bennett, *Addicted to Incarceration: A Federal Judge Reveals Shocking Truths About Federal Sentencing and Fleeting Hopes for Reform* (April, 2018), *Federal Sentencing Reporter*, found at https://ssrn.com/abstract=3156250 ("Perhaps the greatest consensus among federal trial judges about the lack of empirical data to support a guideline is the fraud guideline. The fraud guideline, 2B1.1, can result in a guideline range, in a fairly typical high-end loss case, "equal to first-degree murder and three times longer than 'second degree murder.'" There is simply no empirical basis to justify this ridiculous result, or for that matter, any of the other thousands of fraud sentences informed by the fraud guideline each year. I have never been able to find an empirical basis for even *one* of the dozens of specific offense characteristics contained in the fraud guideline." *Id.* at 96. As Judge Jed S. Rakoff has written, the fraud guideline reflects "an ever more draconian approach to white collar crime, unsupported by any empirical data." *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012).





Senior USPO Whaley
January 20, 2022
Page 8



Exhibit 3, p. 8





Senior USPO Whaley
January 20, 2022
Page 11



Thank you for your consideration of this lengthy letter.

                Sincerely,

                Michael Filipovic
                Federal Public Defender

cc:    Brian Werner, AUSA
       Christopher Sanders, AFPD